US DISTRICT COURT
WESTERN DIST ARKANSAS
FILED

SEP 1 4 2020

DOUGLAS F. YOUNG, Clerk
By
Deputy Clerk

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF ARKANSAS
## TEXARKANA DIVISION

| | | |
|---|---|---|
| KATRICIA HODGES, | § | |
| AS REPRESENTATIVE OF R. I. | § | |
| HODGES, A MINOR, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| VS. | § | C. A. NO.   20-4076 |
| | § | JURY TRIAL REQUESTED |
| GENERAL MOTORS, LLC | § | |
| | § | |
| Defendant. | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

Comes now KATRICIA HODGES, AS REPRESENTATIVE OF R. I. HODGES, a minor (hereinafter sometimes referred to as "Plaintiff"), complaining of GENERAL MOTORS, LLC. (hereinafter sometimes referred to as "Defendant"), and for cause of action would respectfully show unto the Court as follows:

### Parties

1.    Plaintiff KATRICIA HODGES, is the biological mother of R. I. Hodges, who is the biological daughter of deceased, Robert Shane Hodges; both are residents and citizens of Lafayette, Lafayette County, Arkansas.

2.    GENERAL MOTORS, LLC ("General Motors") is a Michigan company at all times doing business in Arkansas. General Motors's office and place of business is 300 Renaissance Center, Detroit, Wayne County, MI 48243. Service of process upon this Defendant may be had by serving its registered agent for service, Corporation Service Company d/b/a CSC-Lawyer's Incorporating Service Company, 211 E. 7th Street, Suite 620, Austin, Texas 78701-4234.

### Jurisdiction and Venue

3.      This court has jurisdiction pursuant to 26 U.S.C. § 1332 (diversity) and has venue under §1391(b)(2) because all the events for this suit took place in Rural Lafayette, Lafayette County, Arkansas. The parties are citizens of Arkansas (Plaintiff) and Michigan (General Motors Company Global Headquarters).  The amount in controversy, exclusive of interest and costs, well exceeds $75,000.00.

### Facts

1.  On or about September 4, 2019, Robert Hodges was driving a 2008 Chevrolet Silverado K1500 Truck (VIN# 3GCEK13M18G138156), driving west on State Highway 160, Rural Lafayette, Lafayette County, Arkansas.

2.  The subject vehicle was designed by Defendant General Motors ("GM").

3.  The subject vehicle was manufactured by GM.

4.  The subject vehicle was also assembled and tested by Defendant GM.

5.  Mr. Hodges was attempting to negotiate a left curve but failed to do so. As a result of the failed negotiation of the curve, Mr. Hodges traveled off the north side of the highway and continued traveling west for approximately 482 feet before re-entering back onto the roadway.

6.  Mr. Hodges crossed the centerline and traveled off the south side of the highway where the front collided with two trees. Immediately following the collision, Mr. Hodges' vehicle spun clockwise and came to a final rest facing north approximately five feet from the shoulder of the roadway.

7.  No airbags deployed in this sequence of events.

8.  There are five (5) recognized crashworthiness principles in the automobile industry/throughout the world. They are as follows:

    a.  Maintain survival space;

    b.  Provide proper restraint throughout the entire accident;

    c.  Prevent ejection;

    d.  Distribute and channel energy; and

    e.  Prevent post-crash fires.

9.  Mr. Hodges was pronounced dead at the scene.

10. When the National Highway Traffic Safety Administration (NHTSA) created the Federal Motor Vehicle Safety Standard (FMVSS) in the late 1960's, the preamble to the safety standards included the above definition of crashworthiness.

11. Crashworthiness safety systems in a vehicle must work together like links in a safety chain. If one link fails, the whole chain fails.

12. Vehicle manufactures have known for decades and have admitted under oath that there is a distinction between the cause of the accident versus the cause of an injury.

13. Indeed, vehicle manufacturers have known for decades that crashworthiness is the science of preventing or minimizing injuries or death following an accident through the use of a vehicle's various safety systems.

14. Lee Iacocca, former President of Ford Motor Company stated, while President and CEO of Chrysler, that "Every American has the right to a safe vehicle."

15. Because every American has the right to a safe vehicle, because safety is for all, and because technologies for meeting the goal of zero injuries and fatalities are basically known today, it is incumbent upon auto manufacturers to investigate and find out what

other automakers are doing with regards to safety and to apply those same methods or technology to their own vehicle.

16. GM designed, manufactured, assembled and placed into the stream of commerce the Chevrolet Silverado K1500 Truck.

17. GM had knowledge of the need for its motor vehicles to be crashworthy.

18. The Chevrolet Silverado K1500 Truck was not crashworthy and contained defects.

19. The Chevrolet Silverado K1500 Truck was negligently designed and manufactured.

20. GM's negligent conduct was attributable to its employees and/or agents who, at all times relevant, were acting within the course, purpose and scope of their employment and/or agency, and with the authority, consent and ratification of GM.

21. It is understood that Defendant GM is responsible for the design, manufacturing, testing, marketing and assembly of the product in question.

### Cause(s) of Actions as to Defendant General Motors

1. The Chevrolet Silverado K1500 Truck was designed by GM.

2. The Chevrolet Silverado K1500 Truck was manufactured by GM.

3. The Chevrolet Silverado K1500 Truck was assembled by GM.

4. The Chevrolet Silverado K1500 Truck was sold by GM

5. The Chevrolet Silverado K1500 Truck was unreasonably dangerous in design and manufacture, and such defect were the producing cause of Robert Hodges's fatal injuries.

6. Defendant GM, either alone or in conjunction with some other individual(s) and/or entity(ies), designed, manufactured, marketed, assembled, and/or tested said vehicle in question.

7.  In addition to the foregoing, Defendant GM, either alone or in conjunction with some other individual(s) and/or entity(ies), designed, manufactured, marketed, assembled, and/or tested said vehicle in question to be unreasonably dangerous and defective within the meaning of Section 402(A) Restatement (Second) Torts, in that the vehicle was unreasonably dangerous as designed, manufactured, assembled, marketed, and/or tested because Defendant knew and/or should have known of the following, non-exhaustive list of defects:

    a.  The vehicle design was not properly subjected to finite element analysis (FEA) or other computer assisted analysis.

    b.  The vehicle structure was not subjected to rigorous engineering analysis.

    c.  The vehicle violated principles of crashworthiness.

    d.  The vehicle's airbag failed to deploy.

    e.  The vehicle failed to provide adequate safety.

    f.  The vehicle failed to provide adequate occupant protection; and

    g.  The defects were the producing cause of the injuries and damages in question.

8.  Defendant GM failed to conduct proper testing and engineering analysis during the design, development and testing of the vehicle.

9.  Defendant GM was negligent in the manufacture, assembly, marketing, and/or testing of the vehicle in question.

10.  In designing a vehicle, efforts should be made by manufacturers to identify potential risks, hazards, and/or dangers that can lead to serious injury or death.

11.  Once potential risks, hazards, and/or dangers are identified, then the potential risks, hazards, or dangers should be eliminated if possible.

12.  If the potential risks, hazards, and/or dangers can't be eliminated, then they should be guarded against.

13.  If the potential risks, hazards, and/or dangers can't be eliminated or guarded against, they should at least be warned about.

14.  A company that does not conduct a proper engineering analysis that would help it to identify potential risks, hazards, and/or dangers that could seriously injure someone is negligent.

15.  Based upon information and/or belief, Defendant either used or knew about advanced safety features used in Europe, Australia, Japan and some other country and chose not to offer those safety features to American consumers.

16.  Defendant's occupant protection philosophy and design philosophy are utilized in various model vehicles, including ones sold overseas in other markets.

17.  When Defendant GM designed the subject vehicle, it did not reinvent the wheel. Defendant GM used an enormous amount of human capital which had been acquired from numerous different engineers which had worked on many prior vehicles. This knowledge would have been utilized in different aspects of the various designs of the subject vehicle.

18.  Defendant GM is currently in exclusive possession and control of all the technical materials and other documents regarding the design, manufacture, and testing of the vehicle in question. Defendant GM is also in possession of what, if any, engineering analysis it performed.

19.  However, it is expected that after all of these materials are produced in discovery and/or after Defendant's employees and corporate representatives have been deposed, additional allegations may come to light.

20.    Lastly, as further support for Plaintiff's manufacturing defect claims, Plaintiff provides notice of the intention to rely upon the malfunction doctrine (also known as the malfunction theory) as set forth in the Restatement (Third) of Torts: Products Liability § 3 (1998). In this instance, it may be inferred that the fatal injured sustained by Robert Hodges was caused by a product defect existing at the time of sale or distribution, without proof of a specific defect, because the injuries suffered by Robert Hodges: (a) were of the kind that ordinarily occur as a result of a product defect; and (b) were not, in the particular case, solely the result of causes other than the product defect existing at the time of sale or distribution. Restatement (Third) of Torts: Products Liability § 3 (1998).

21.    The foregoing acts and/or omissions, design defects and negligence of Defendant GM were the producing, direct, proximate and legal cause of the Plaintiff's serious injuries and damages.

### Damages

1.   As a result of the acts and/or omissions of  Defendant, R. I. Hodges has suffered extreme emotional distress, mental anguish and loss of consortium in the past and, in all likelihood, will into the future as a result of the death of her father.

2.   Plaintiff asserts claims based on personal injury and survival claims and seeks to recover all non-economic damages for these claims as recognized under Arkansas law.

3.   As a direct and proximate result of the acts and omissions of Defendant, Plaintiff has sustained actual damages above this court's minimum jurisdictional limits.

## Jury Demand

25.    Plaintiff asserts her rights under the Seventh Amendment to the U.S. Constitution and respectfully demands, in accordance with Federal Rule of Civil procedure 38, a trial by jury on all issues.

## CONCLUSION AND PRAYER

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff prays that Defendant be cited to appear herein, and for judgment against Defendant for Plaintiff's damages, pre and post judgment interest as provided by law, costs of suit, and for such other and further relief, whether general or specific, in law or in equity, to which Plaintiff may show herself justly entitled.

Respectfully submitted,


_/s/ Stewart D. Matthews_____
Stewart D. Matthews
Arkansas State Bar No. 2013289
Texas State Bar No. 24039042
Attorney@accidentlawyer.legal
1905 W. Ennis Avenue
Suite 506
Ennis, Texas  75119
(972) 398-6666 – Phone
(214) 206-9991 – Fax

**Attorney for Plaintiff**





**CERTIFIED MAIL**

7015 1520 0002 9979 6018

**S.D. MATTHEWS
& ASSOCIATES, LLC**

A PROFESSIONAL ASSOCIATION OF ATTORNEYS

ATTORNEYS & COUNSELORS AT LAW

**District Court Clerk**
**United States Courthouse**
101 South Jackson Avenue, Room 205
El Dorado, Arkansas 71730-6133